UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
TERRY HO and TSANG TAO,                                     :    **MEMORANDUM**
                                                            :    **DECISION AND ORDER**
                                Plaintiffs,                 :
                                                            :    15 Civ. 3730 (BMC)
                - against -                                 :
                                                            :
RENO CALABRIGO,                                             :
                                                            :
                                Defendant.                  :
----------------------------------------------------------- X

**COGAN**, District Judge.

    Plaintiffs bring this action for breach of contract and securities fraud arising out of the purchase of certain securities. It is before me on plaintiffs' motion for a default judgment. Because plaintiffs' complaint is fundamentally inconsistent with the relief they seek, their motion is denied and the complaint is dismissed with leave to amend.

## BACKGROUND

    The complaint alleges that on or about September 19, 2014, plaintiffs entered into a contract with defendant Calabrigo to purchase a controlling interest in a publicly traded Nevada corporation named Avix Technologies, Inc. ("Avix") for $150,000 (the "Contract"). The Contract, which is in both English and Chinese, is annexed to the complaint, but it is not between plaintiffs and Calabrigo. The purchaser is listed as "Zhang Tao," which I will assume is an alternate spelling for plaintiff "Tsang Tao," but plaintiff Terry Ho is not mentioned. In addition, contrary to the allegation in the complaint, Calabrigo is not listed as the seller. Instead, the seller is listed as Avix, "by" a signature that I cannot read but which could be that of Calabrigo, followed by his "Title: President & CEO."

The complaint then alleges that Calabrigo falsely represented that he had "requisite legal capacity to execute, deliver, and perform this Agreement and the transactions hereby [sic] contemplated." No time, place, or circumstance is attached to this allegation, and such representations do not appear in the Contract. Rather, Avix represents its legal capacity to enter into the agreement, not Calabrigo. Plaintiffs nevertheless allege generally that they relied on Calabrigo's false representations.

The complaint further alleges that at the same time they entered in to the Contract, the parties entered into an escrow agreement, which is annexed to the complaint. That allegation is not accurate either. The escrow agreement was entered into by someone named Cornelia Volino, who is not otherwise identified to me, but is described in the escrow agreement as one of two "selling shareholder[s] of common and preferred stock of AVIX," the other being "Tyler Patterson, the Convertible Note Holder," who is also not otherwise identified to me. The purchaser is listed as "GrupoEuro Consultorres, Co. Ltd. ('GrupoEuro'), representing itself and representing Zhang Tao," who I will again assume is plaintiff Tsang Tao. The escrow agent is listed as "J.M. Walker & Associates," a Colorado law firm. The escrow agreement is signed by Cornelia and Tyler, as sellers; plaintiff Terry Ho in his capacity as being "of GrupoEuro" and "as "Agent for Zhang Tao"; and the law firm, as escrow agent.

The complaint proceeds to allege that Calabrigo received $27,442.77 on September 22, 2014, and $35,000 on September 24, 2014.

The complaint then appears to allege a second transaction, in which, on or about November 12, 2014, plaintiffs agreed to purchase a convertible promissory note from Tyler for $10,000. The complaint alleges that the debt purchase agreement is annexed to it as Exhibit B, but Exhibit B is the escrow agreement. I believe plaintiffs intended to refer to Exhibit C to the

2

complaint, which is entitled "Debt Purchase Assignment Agreement" (the "DPA"). However, the "assignee" under the DPA is neither of the plaintiffs here; rather, the assignee is GrupoEuro, signed on its behalf by plaintiff Ho, although his title is left blank. In any event, the complaint alleges that Calabrigo forged Tyler's signature on this agreement.

The complaint contains two causes of action. The first accuses Calabrigo of breaching the Contract by failing to deliver any of the shares that he agreed to sell. The second is for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. It alleges that Calabrigo "willfully misrepresented his authority to sell the shares" and repeats the allegation that Calabrigo forged Tyler's signature on the DPA. Both claims seek $142,000 in damages and related relief.

The affidavit of service recites that Calabrigo was served in Ontario, where he resides, on August 10, 2015. Upon his failure to appear, plaintiffs requested entry of default from the Clerk, which was made on September 14, 2015. I then ordered plaintiffs to "move for default judgment, including detailed proof of damages supported by admissible evidence . . .."

In response, plaintiffs, although designating their filing as a "motion for default judgment" on ECF, filed another request for entry of default, which was virtually the same as the one which they had previously filed with the Clerk. That is, plaintiffs filed an affidavit by their attorney, averring that serviced had been made, and requesting entry of default judgment in the amount demanded in the complaint, plus statutory interest of 9%, plus costs of service and the filing fee. Several days later, plaintiffs filed a supporting declaration of Terry Ho.

The declaration of Ho is short and essentially repeats the allegations from the complaint. It states that plaintiffs entered into a contract with Calabrigo for the purchase of Avix stock, Calabrigo falsely represented that he had the legal capacity to sell the stock, plaintiffs relied on

3

these representations, and that plaintiffs paid $35,000 to Calabrigo on or about September 24, 2014. No documentation has been offered to support these averments. In addition, the declaration avers, for the first time, and again without documentation, that plaintiffs paid $50,000 for the Avix stock on September 19, 2014 and that when Calabrigo failed to deliver the securities, "[plaintiffs] were forced to enter into a second agreement with a third party to obtain control of the company." Under that second agreement, which again is unnamed, but presumably refers to the escrow agreement, plaintiffs were "forced to pay an additional $57,000." The declaration does not otherwise specify to whom the $57,000 was paid, though it stands to reason that the amount was paid to the "third party" and not Calabrigo.

Plaintiffs also submitted a proposed judgment.

## DISCUSSION

It is hornbook law that on a motion for default judgment, the well-pleaded allegations of the complaint pertaining to liability are accepted as true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). However, if the claims asserted in a complaint make no sense, the district court must retain discretion to deny the motion. Many cases in this district go even farther, authorizing a plausibility assessment of the complaint as if the judge was the lawyer for the defendant. For example, as one of my colleagues has held:

> The fact that a complaint stands unanswered does not suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to establish that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.

Liberty Mut. Ins. Co. v. Luxury Transp. Mgmt. Inc., No. 07 Civ. 608, 2009 WL 1033177, at *6 (E.D.N.Y. Apr. 16, 2009).

4

Despite some holdings like these, I am generally not receptive to the notion of close scrutiny of defaulted complaints for a plausibility assessment, as I do not want to reward a defendant who has chosen to default with a federal judge to be his lawyer. As Judge Korman observed recently in Greathouse v. JHS Sec. Inc., 784 F.3d 105, 119, 120-21 (2d Cir. 2015) (Korman, D.J., concurring in part and dissenting in part):

> There is something wrong when a case or controversy, to the extent that it exists, is principally between a plaintiff and the judges deciding the case. . . .
>
> The magistrate in the case essentially took it upon himself to act as counsel for parties who had not bothered themselves to appear in court. Acting as both counsel and judge, the magistrate – affirmed by the district judge – *sua sponte* denied damages on a previously entered default judgment on the basis of a defense that the defendants may have waived if they had appeared and not timely raised it. Then, we appointed counsel to defend on appeal the lawyering of these judicial officers on behalf of parties who never even appeared in court. Thus, through the magistrate judge, the district court judge, and the able counsel appointed by this Court, defendants may have obtained far more capable representation than they would have obtained had they not chosen voluntarily to default and instead retained their own counsel.

(citation omitted). Judge Korman, nevertheless, acknowledged that there are appropriate instances when a district court has discretion to deny default judgment – for example, when a claim is frivolous. Id. at 119.

I would expand upon Judge Korman's exception for frivolity to include cases like the instant case. I cannot say that plaintiffs' claims are frivolous, but on their face, they make no sense. At the very least, the wrong parties are before me in whole or in part, and the securities fraud claim pertains to a representation made by Avix, a non-party. I cannot put the Court's imprimatur on a judgment that approves a complaint that is not merely legally vulnerable, but wholly self-contradictory.

Plaintiff Ho is not a party to any contract; at most, he signed the DPA in his corporate or agency capacity. See Airlines Reporting Corp. v. S & N Travel, Inc., 857 F. Supp. 1043, 1046

(E.D.N.Y. 1994), aff'd, 58 F.3d 857 (2d Cir. 1995) ("An agent cannot maintain an action on a contract in his own name on behalf of his principal unless he is a party to the contract, a transferee, or a holder of an interest in the contract."). Perhaps plaintiffs only want me to enter judgment in favor of plaintiff Tao (the proposed judgment is in favor of a single plaintiff, but it does not say which one), but it does not appear that either plaintiff was a party to the DPA – the assignee was only GrupoEuro.

Nor, without more, can I enter judgment against Calabrigo. There is no breach of contract claim against him, because he is not a party to the Contract, having signed it (if it is his signature) only in a corporate capacity. See Ads Plus Adver., Inc. v. Ault, 928 F. Supp. 2d 683, 689 (W.D.N.Y. 2013) ("Under New York Law, '[a]n agent who signs an agreement on behalf of a disclosed principal will not be held liable for its performance unless the agent clearly and explicitly intended to substitute his personal liability for that of his principal.'") (citing Yellow Book Sales & Distribution Co. v. Mantini, 85 A.D.3d 1019, 925 N.Y.S.2d 646 (2d Dep't 2011). And plaintiff's allegation that Calabrigo misrepresented his corporate authority makes no sense since Calabrigo is not a party to the Contract, and the representation of legal capacity was made by the corporation (Avix) itself. Indeed, the allegation of Calabrigo's misrepresentation is taken verbatim from the Contract. Thus, what plaintiffs have done is effectively pierce Avix's corporate veil to get to Calabrigo without ever alleging that Avix has any liability.

Based on the documents, the most I could say is that plaintiff Tao might be entitled to a judgment against Avix, if Avix lacked the corporate capacity that it represented it had, and GrupoEuro is entitled to a judgment against Calabrigo, if Calabrigo forged Tyler's signature. But that is not the complaint that is before me.

It was plaintiffs' prerogative to annex the transactional documents to the complaint. See Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994). Having chosen to submit them, they are incorporated into the complaint, and plaintiff cannot plead claims that flatly contradict them. See Fisk v. Letterman, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) (the "Court [ ] is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint"); Matusovsky v. Merrill Lynch, 186 F.Supp.2d 397, 399-400 (S.D.N.Y. 2002). Plaintiff's motion for default judgment is therefore denied and the complaint is dismissed, with leave to file an amended complaint within 10 days.

Although the need to replead obviates the deficiencies in the Ho affidavit, since plaintiffs, if they remain plaintiffs, are going to need to reserve the amended complaint on the proper defendant or defendants who may or may not default, I note the following in case plaintiffs find themselves before me on a second default judgment motion. The Ho affidavit is not adequate. My Order required detailed proof. Conclusory, naked statements that vague representations were made and undocumented transactions occurred will not be adequate to constitute proof of damages.

## CONCLUSION

Plaintiffs' motion for a default judgment [11] is denied. The complaint is dismissed with leave to amend within 10 days.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      September 29, 2015